IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YUSUF MUHAMMAD, | : | No. 4:23cv212 |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| S. BROWN, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Yusuf Muhammad ("Muhammad"), a state inmate housed at all relevant times at the State Correctional Institution at Waymart, Pennsylvania ("SCI-Waymart"), commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 57). Named as defendants are Correctional Officer Brown, Correctional Officer Kelley,[1] Correctional Officer Gilbert, Correctional Officer Lewis, Correctional Officer Spry, and Sergeant Morcom.

Presently pending is defendants' motion (Doc. 62) to partially dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants seek the dismissal of Defendants Brown, Gilbert, Lewis, Spry, and

---

[1] Plaintiff spells this defendant's name as "Kelly." In their filings, however, the defendants spell the name as "Kelley." The court will adopt the defendant's spelling as correct.

Morcom. They argue that the case should proceed only as to the First Amendment retaliation claim against Kelley. For the reasons that follow, the court will grant defendants' motion.

I. **Factual Background & Procedural History**

Muhammad alleges that since he has been incarcerated at SCI-Waymart, he has been subjected to "a campaign of harassment." (Doc. 57, at 2 ¶ 4). He alleges that, from September 2022 until January 2023, defendants Brown and Kelley retaliated against him for filing grievances and a lawsuit against them, and subjected him to verbal abuse, humiliation, and termination from his prison job. (See Doc. 11, at 12 ¶ 12). Specifically, in November of 2022, defendant Kelley allegedly contacted a maintenance officer at SCI-Waymart and urged him to fire Muhammad from his maintenance job. (Id. at 14 ¶ 21).

Muhammad next alleges that, from February 6, 2023, through March 9, 2023, defendants Gilbert, Lewis, Spry, and Morcom harassed him in retaliation for "filing grievances and this lawsuit against defendants c/o Brown and c/o Kelly [sic]." (Doc. 57 at, 1-3 ¶¶ 3, 4, 10). He alleges that defendants Gilbert, Lewis, Spry, and Morcom banged on his cell door and walls, pointed their flashlights in his face, spilled his food tray, manipulated the water flow in his sink, denied him toilet paper, and taunted him. (Id. at 2 ¶ 4). Muhammad further asserts that defendant Morcom, in his role as sergeant, condoned the actions of Gilbert,

Lewis, and Spry and, further, "participated in these daily events and did nothing to stop defendants from harassing the plaintiff." (Id. at 2 ¶ 5).

As a result of these actions, Muhammad alleges that he suffered from emotional distress, including fear, depression, anxiety, nightmares, worrying, crying spells, loss of appetite, weight loss, and hopelessness. (Id. at 3 ¶ 9).

Defendants now move to partially dismiss the second amended complaint on the following grounds: (1) any official capacity claims are barred by the Eleventh Amendment; (2) Muhammad failed to allege a viable First Amendment retaliation claim against Gilbert, Lewis, Spry, and Morcom; (3) Muhammad failed to allege that Gilbert, Lewis, Spry, Morcom, and Brown were personally involved in his termination from employment; and (4) the Prison Litigation Reform Act ("PLRA") does not provide a cause of action for emotional distress.[2] (Doc. 63). Briefing on the motion to dismiss is complete and the motion is ripe for review.

## II.  **Legal Standards**

### A.  **Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6),

---

[2] Defendants maintain that the second amended complaint should only proceed on the First Amendment retaliation claim against defendant Kelley. (Doc. 63, at 1).

3

the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the...claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11

(3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### B. 42 U.S.C. Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause

of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. Discussion

### A. Official Capacity Claims

Defendants first argue that Muhammad's claims against them in their official capacities are barred by sovereign immunity. (Doc. 63, at 5-6). Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988). Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent. Id.; see also Monell v. Dep't of Social Servs., 436 U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. Hafer v. Melo, 502 U.S. 21, 25 (1991). However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01, 117 (1984); Seminole Tribe v. Florida, 517 U.S.

44, 54 (1996); Lavia v. Pennsylvania, 224 F.3d 190, 195-96 (3d Cir. 2000). That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought. Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974). Congress has not abrogated the immunity regarding Muhammad's claims, nor has Pennsylvania waived this grant of immunity. See 42 Pa. C.S.A. § 8521(b). Thus, Muhammad's section 1983 claim against the defendants in their official capacities is barred by sovereign immunity and will be dismissed. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010).

    **B.**    **Retaliation Claim against Gilbert, Lewis, Spry, and Morcom**

Defendants next seek to dismiss the retaliation claim against Gilbert, Lewis, Spry, and Morcom. (Doc. 63, at 6-11). The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend. I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim, Muhammad bears the burden of demonstrating three elements. First, he must prove that he was engaged in a

constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, he must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Rauser, 241 F.3d at 333 (quoting Allah, 229 F.3d at 225).  This requirement is satisfied by showing adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Rauser, 241 F.3d at 333 (quoting Allah, 229 F.3d at 225).  Significantly, the effect of the adverse action must be more than *de minimis*. McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).  Third, he is required to show that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take action against him.  Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

8

First, Muhammad does not allege that he filed any grievances or lawsuits against defendants Gilbert, Lewis, Spry, or Morcom. Rather, he alleges that "defendants c/o Gilbert, c/o Lewis, c/o Spry and Sergeant Morcom…retaliated against plaintiff for filing grievances and this lawsuit against defendants c/o Brown and c/o Kelly [sic]." (Doc. 57, at 1-2 ¶ 3). Courts have consistently rejected retaliation claims "against one defendant based on [protected activity] against another [individual]" for lack of retaliatory motive. Victor v. Lawler, Civ. No. 3:07cv2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), aff'd, 565 F. App'x 126 (3d Cir. 2014) (nonprecedential); see also Evans v. Rozum, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); Royster v. Beard, 308 F. App'x 576, 579 (nonprecedential) (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Muhammad fails to clear the first Rauser hurdle in that he has not established that he was engaged in constitutionally protected activity at the time of the alleged retaliatory conduct of defendants Gilbert, Lewis, Spry, and Morcom. These defendants are entitled to dismissal on the retaliation claim.

Even assuming, *arguendo*, that Muhammad's second amended complaint sufficiently alleges that he engaged in constitutionally protected activity, his

9

second amended complaint fails to plausibly allege that he suffered adverse action at the hands of defendants Gilbert, Lewis, Spry, and Morcom. Muhammad alleges that defendants Gilbert, Lewis, Spry, and Morcom harassed him by banging on his cell door and walls, pointing their flashlights in his face, spilling his food tray, manipulating the water flow in his sink, denying him toilet paper, taunting him, and calling him derogatory names. (Doc. 57, at 2 ¶ 4). It is well-settled, however, that verbal harassment or threats, even if acted upon, do not constitute adverse action for purposes of establishing a First Amendment retaliation claim. See, e.g., Burgos v. Canino, 358 F. App'x 302, 306 (3d Cir. 2009) (nonprecedential) (noting that "because threats alone do not constitute retaliation, the claim relating to the threat failed"); Revell v. City of Jersey City, 394 F. App'x 903, 906 (3d Cir. 2010) (nonprecedential) ("The retaliatory conduct that [plaintiff] alleges is insufficient as a matter of law 'to deter a person of ordinary firmness from exercising [his] First Amendment rights.' Courts have declined to find adverse action where the 'alleged retaliatory acts were criticism, false accusations or verbal reprimands.'"). While Muhammad hypothesizes that some of defendants' comments could have resulted in negative actions being taken against him by other prisoners or staff (Doc. 57, at 2-3), he makes no allegations that any such action materialized. Thus, the court finds that the threats and harassing comments would not deter a person of ordinary firmness

from filing grievances or lawsuits and cannot support a First Amendment retaliation claim. See Burgos, 358 F. App'x at 306-07 (requiring prisoner to submit to a urinalysis, harassment, threats, temporary inconveniences such as the denial of cleaning supplies and lack of running water in a cell, and denial of recreation did not rise to level of adverse action against prisoner). Because Muhammad has failed to establish an adverse action—and, thus, has not set forth a claim for retaliation—the court need not reach the third prong of a claim for retaliation. The court will grant defendants' motion to dismiss the First Amendment retaliation claim against Gilbert, Lewis, Spry, and Morcom.

### C. Lack of Personal Involvement of Gilbert, Lewis, Spry, Morcom, and Brown in Termination from Employment Claim

Muhammad also alleges that in November of 2022, defendant Kelley contacted a maintenance officer at SCI-Waymart and urged him to fire Muhammad from his maintenance job out of retaliation. (Doc. 11, at 14 ¶ 21). While "the termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights," Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017), Muhammad never alleges that defendants Gilbert, Lewis, Spry, Morcom, or Brown participated in, or had any knowledge of, this alleged adverse action. Muhammad has thus failed to state a plausible retaliation claim against defendants Gilbert, Lewis, Spry, Morcom, and Brown, based on his termination from employment, because this alleged retaliatory

11

action is not attributable to these five defendants. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (quoting Rode, 845 F.2d at 1207). In other words, a plaintiff must bring forth allegations demonstrating how each defendant played an "affirmative part" in the alleged constitutional deprivation. Iqbal, 556 U.S. at 677 ("In a § 1983 suit...[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Furthermore, while liability under § 1983 cannot be predicated on a respondeat superior basis and state actors typically "are liable only for their own unconstitutional conduct," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, 'a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to

violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." Id. However, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (nonprecedential) (*per curiam*).

Muhammad has failed to allege that defendants Gilbert, Lewis, Spry, Morcom, and Brown had any personal involvement in the termination from his employment. As the above description makes clear, this alleged retaliatory act was not made by defendants Gilbert, Lewis, Spry, Morcom, and Brown. They are entitled to dismissal based on a lack of personal involvement.

### D.     Physical Injury Requirement

Lastly, defendants seek dismissal of Muhammad's second amended complaint on the ground that he "cannot create a cause of action based on his emotional distress" under section 1997(e) of the PLRA. (Doc. 63, at 13). Section 1997(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a proper showing of physical injury." 42 U.S.C. § 1997(e). Since Muhammad did not allege a physical injury, this section would bar compensatory damages, but would have no effect on nominal or punitive

13

damages, or declaratory or equitable relief. See Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003). Therefore, defendants' motion will be partially granted in that Muhammad's recovery, if any, will be limited to nominal and/or punitive damages and injunctive relief.

## IV.  Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the court must grant Muhammad leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). The above claims against the defendants are factually and legally flawed; thus, the court concludes that granting Muhammad leave to file a third amended complaint would be both futile and inequitable. See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (where an inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## V.  Conclusion

Based on the foregoing, the court will grant defendants' motion (Doc. 62) to partially dismiss the second amended complaint. The following individuals will be terminated as defendants from the caption of this case: Correctional Officer Brown, Correctional Officer Gilbert, Correctional Officer Lewis, Correctional Officer Spry, and Sergeant Morcom. In addition, Muhammad's request for

compensatory damages will be stricken from the second amended complaint. (Doc. 57, at 3 ¶ 11). Finally, Muhammad will be permitted to proceed on the First Amendment retaliation claim against defendant Kelley.

    A separate order shall issue.

Date: July 25, 2024

JUDGE JULIA K. MUNLEY
United States District Court