IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YUSUF MUHAMMAD,                          :        No. 4:23cv212

               **Plaintiff**          :        (Judge Munley)

       v.                                    :

CORRECTIONAL OFFICER KELLEY,   :

             **Defendant**          :

## MEMORANDUM

Plaintiff Yusuf Muhammad ("Muhammad"), an inmate housed at all relevant times at the State Correctional Institution at Waymart, Pennsylvania ("SCI-Waymart"), commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 57). The sole remaining claim is a First Amendment retaliation claim against Correctional Officer Kelley. (See Docs. 79, 80)

Presently pending is defendant Kelley's motion (Doc. 92) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the court will grant defendant's motion and enter judgment in her favor.

I.    **Factual Background & Procedural History**[1]

The crux of Muhammad's claim is that defendant Kelley retaliated against

him for filing grievances by contacting a maintenance officer at SCI-Waymart and

urging him to fire Muhammad from his maintenance job.  (Doc. 57).

Muhammad worked for the plumbing crew at SCI-Waymart from October 3,

2022 to October 25, 2022.  (Doc. 93 ¶ 2).

Prior to his incarceration, Muhammad was a self-employed plumber and

also worked at a private plumbing company.  (Id. ¶ 3).  Unit Manager Joseph

Karlavige recommended that Muhammad work with the plumbing crew.  (Id.)

Therefore, on September 29, 2022, Joseph Chiumento, SCI-Waymart's

Corrections Employment Vocational Coordinator, assigned Muhammad to Louis

Calachino's plumbing crew.  (Id. ¶ 4).  Muhammad's start date was October 3,

2022.  (Id.)

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal
Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the
material facts, in numbered paragraphs, as to which the moving party contends there is no
genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for
summary judgment must file a separate statement of material facts, responding to the
numbered paragraphs set forth in the moving party's statement and identifying genuine issues
to be tried.  Id.  Unless otherwise noted, the factual background herein derives from
defendant's Rule 56.1 statement of material facts and supporting exhibits. (Doc. 93).
Muhammad did not file a response to defendant's statement of material facts.  The court
accordingly deems the facts set forth by defendant to be undisputed.  See LOCAL RULE OF
COURT 56.1; see also Doc. 96 ¶ 2 (advising Muhammad that failure to file a responsive
statement of material facts would result in the facts set forth in defendant's statement of
material facts being deemed admitted).

Within three weeks of employment, the plumbing crew wanted to terminate Muhammad from their team. (Id. ¶ 5). Muhammad's supervisors, Heid and Calachino, expressed concerns regarding Muhammad's tardiness, demanding attitude, and his threats to go over his supervisors' heads to higher authority when he did not get his way. (Id. ¶ 6). Muhammad attested that because of the special diet line, medication line schedule, and mandatory classes, he could not report to work when needed. (Id. ¶ 7). Chiumento inquired to see if a possible solution could be identified, such as employment through another work assignment. (Id. ¶ 8). While a solution was being formulated, Chiumento transferred Muhammad to the general labor pool. (Id. ¶ 9). Muhammad remained in the general labor pool and was officially assigned to another crew on December 5, 2022. (Id. ¶ 10).

Muhammad has an extensive grievance history and filed several grievances during the relevant timeframe. (Id. ¶ 15; Doc. 93-5). Between October 21, 2022 and October 26, 2022, Muhammad filed five grievances against defendant Kelley. (Doc. 93 ¶ 11; Docs. 93-7, 93-8, 93-9, 93-11, 93-12). Muhammad withdrew all five grievances on November 3, 2022. (Doc. 93 ¶ 12). The Department of Corrections ("DOC") Administrative Directive 804 ("DC-ADM 804") provides that an inmate can withdraw a grievance at any point in the grievance process. (Id. ¶ 13). To withdraw a grievance, an inmate must use and

sign the Inmate Grievance Withdrawal Form (Attachment 1-B), identify the grievance to be withdrawn by number, the reason why the grievance was withdrawn and forward the form to the Grievance Coordinator.  (Id. ¶ 14). Muhammad completed and signed the Inmate Grievance Withdrawal Form (Attachment 1-B) when withdrawing his grievances against defendant Kelley. (Doc. 93-7, at 4; Doc. 93-8, at 4; Doc. 93-9, at 4; Doc. 93-11, at 4; Doc. 93-12, at 4).

The five grievances pertaining to defendant Kelley are as follows.

On October 21, 2022, Muhammad filed grievance 1003273, wherein he alleged that Kelley engaged in unprofessional behavior and conspired to harass him.  (Doc. 93 ¶ 16; Doc. 93-7, at 1-3).  On November 3, 2022, Muhammad withdrew grievance 1003273.  (Doc. 93-7, at 4).

On October 25, 2022, Muhammad filed grievance 1003552 regarding Kelley's alleged complaining about the content of Muhammad's phone conversation with his wife.  (Doc. ¶ 17; Doc. 93-8, at 1-3).  On November 3, 2022, Muhammad withdrew grievance 1003552.  (Doc. 93-8, at 4).

On October 26, 2022, Muhammad filed grievance 1003737, wherein he alleged that he was fired from his maintenance detail job in retaliation for filing grievances against Kelley.  (Doc. 93 ¶ 18; Doc. 93-9, at 1-3).  Muhammad speculated that Kelley spoke to his detail supervisor and spoke negatively about

him. (Id.). Within grievance 1003737, Muhammad alleged that his support team failed to meet with him to discuss the situation. (Doc. 93 ¶ 19; Doc. 93-9, at 1-3). However, Muhammad's Inmate Cumulative Adjustment Records confirm that Muhammad did meet with DOC employees, and discussed the situation, on October 20, 2022 and October 26, 2022. (Id. ¶ 20). On October 20, 2022, Muhammad met with his unit manager, Joseph Karlavige, regarding issues at work. (Id. ¶ 21). Karlavige informed Muhammad that he would discuss the issues with his work supervisor. (Id.) On October 26, 2022, Muhammad met with Major Davy, CCII Cush, and Unit Manager Karlavige. (Id. ¶ 22). The parties discussed Muhammad's employment. (Id.) Muhammad was informed that his supervisors in plumbing requested that he be terminated due to his attitude and inability to work when needed due to his busy schedule. (Id.) The team agreed to discuss the concerns further with Muhammad's work supervisors. (Id.) On November 3, 2022, Muhammad withdrew grievance 1003737. (Doc. 93-9, at 4).

On October 26, 2022, Muhammad filed grievance 1003741, reiterating that he filed multiple grievances against Kelley, but the DOC failed to investigate the grievances. (Doc. 93 ¶ 23; Doc. 93-11, at 1-3). In grievance 1003741, Muhammad alleged that the failure to investigate was an attempt to cover-up officer misconduct. (Id.) On November 3, 2022, Muhammad withdrew grievance 1003741. (Doc. 93-11, at 4).

On October 30, 2022, Muhammad filed grievance 1003277, alleging that Kelley continued to harass and verbally abuse him, and encouraged others to do so. (Doc. 93 ¶ 25; Doc. 93-12, at 1-3). In grievance 1003277, Muhammad requested a transfer; however, at the same time, Muhammad complained and alleged that Kelley conspired with others to transfer him. (Id.) On November 3, 2022, Muhammad withdrew grievance 1003277. (Doc. 93-12, at 4).

Discovery has concluded and defendant Kelley now moves for summary judgment. (Doc. 92). Muhammad failed to respond to defendant's motion and the time for responding has now passed.[2] Therefore, the motion is deemed unopposed and ripe for resolution.

## II.    Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

---

[2] Muhammad was directed to file a brief in opposition to defendant's motion for summary judgment and was admonished that failure to file an opposition brief would result in defendant's motion being deemed unopposed. (Doc. 96) (citing LOCAL RULE OF COURT 7.6).

This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F.Supp.2d at 315.

## III.    Discussion

Defendant moves for summary judgment based on Muhammad's failure to properly exhaust his remaining claim.[3] (Doc. 94, at 12-15). Alternatively, defendant argues that she should prevail on the merits of the claim. (Id. at 5-11). Because the court finds that Muhammad failed to satisfy the exhaustion requirement, the court does not reach the merits of his claim.

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. See id. § 1997e(a); Ross v. Blake, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the

---

[3] In accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), the court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded them the opportunity to be heard under Small v. Camden Cnty., 728 F.3d 265 (3d Cir. 2013). (Doc. 95).

administrative system.  See Woodford v. Ngo, 548 U.S. 81, 85 (2006).  However,

there are situations in which a grievance procedure may be rendered

"unavailable" to an inmate, such as when a prison official thwarts an inmate's

ability to use it, Ross, 578 U.S. at 643-44, when intimidation by means of "serious

threats of retaliation and bodily harm" prevent an inmate from filing, Rinaldi v.

United States, 904 F.3d 257, 266-67 (3d Cir. 2018), or when a prison has

"rendered its administrative remedies unavailable…when it failed to timely (by its

own procedural rules) respond to [an inmate's] grievance and then repeatedly

ignored his follow-up requests for a decision on his claim," Robinson v.

Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016); see also

Shifflett v. Korszniak, 934 F.3d 356, 359 (3d Cir. 2019).

Under Third Circuit precedent, "exhaustion is a question of law to be

determined by a judge, even if that determination requires the resolution of

disputed facts." Small v. Camden Cnty., 728 F.3d 265, 269 (3d Cir. 2013) (citing

Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010)); see also Drippe, 604

F.3d at 781 ("Juries decide cases, not issues of judicial traffic control.  Until the

issue of exhaustion is resolved, the court cannot know whether it is to decide the

case or the prison authorities are to.") (quoting Pavey v. Conley, 544 F.3d 739,

741 (7th Cir. 2008)); cf. Wilkerson v. United States, No. 3:13-1499, 2014 WL

1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact,

the court should conduct a plenary trial on the contested facts prior to making [an

exhaustion of administrative remedies] determination."). "Although the

availability of administrative remedies to a prisoner is a question of law, it

necessarily involves a factual inquiry." Small, 728 F.3d at 271 (citations omitted).

The Department of Corrections has an Inmate Grievance System, set forth

in DC-ADM 804, which permits any inmate to seek review of problems that may

arise during the course of confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF

CORR., No. DC-ADM 804, available at https://www.cor.pa.gov (last accessed

March 20, 2025). After an attempt to resolve any problems informally, an inmate

may submit a written grievance to the Facility's Grievance Coordinator for initial

review. See DC-ADM 804. This must occur within fifteen days after the events

upon which the claims are based. Id. Within fifteen days of an adverse decision

by the Grievance Coordinator, an inmate may then appeal to the Facility

Manager of the institution. Id. Thereafter, within fifteen days of an adverse

decision by the Facility Manager, an inmate may file a final appeal to the

Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Id. An appeal

to final review cannot be completed unless an inmate complies with all

established procedures. An inmate must exhaust all three levels of review and

comply with all procedural requirements of the grievance review process in order

to fully exhaust an issue.  See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir.

2000) (outlining Pennsylvania's grievance review process).

    With regard to the remaining claim against defendant Kelley, Muhammad

filed five relevant grievances—numbers 1003273, 1003552, 1003737, 1003741,

and 1003277.  (Docs. 93-7, 93-8, 93-9, 93-11, 93-12).  Muhammad withdrew

each grievance on November 3, 2022.  (Doc. 93-7, at 4; Doc. 93-8, at 4; Doc. 93-

9, at 4; Doc. 93-11, at 4; Doc. 93-12, at 4).

    It is clear from the record before this court that Muhammad failed to

exhaust his administrative remedies before filing the above-captioned action.

The undisputed record reveals that Muhammad withdrew each relevant

grievance concerning defendant Kelley's conduct, prior to Muhammad seeking

any level of review of said grievances.  Muhammad did not submit any evidence

to refute defendant's exhibits, which demonstrate that he failed to properly

pursue this matter through all levels of appeal.  Nor has Muhammad presented

any argument that his failure to exhaust should be excused.  In light of

Muhammad's failure to properly exhaust his remaining claim, defendant is

entitled to summary judgment.  See Woodford, 548 U.S. at 92 (mandating

complete exhaustion of all administrative remedies before filing suit); see also

Velasquez v. DiGuglielmo, 516 F. App'x 91, 95 (3d Cir. 2013) (nonprecedential)

(finding, *inter alia*, that inmate did not exhaust his administrative remedies where

10

he withdrew his grievance); <u>Rivera v. Pa. Dep't of Corr.</u>, 388 F. Appx 107, 108

(3d Cir. 2010) (nonprecedential) ("An inmate must exhaust his administrative

remedies prior to filing a civil action in federal court").

## IV.    Conclusion

Consistent with the foregoing, the court will grant defendant Kelley's motion

(Doc. 92) and enter judgment in her favor.  A separate order shall issue.

Date: March 21 , 2025

_____
JUDGE JULIA K. MUNLEY
United States District Court
